970 P.2d 1071 (1998)
Sandra D. WRIGHT, f/k/a Sandra Osburn, Appellant,
v.
David L. OSBURN, Respondent.
No. 28714.
Supreme Court of Nevada.
December 30, 1998.
Bruce I. Shapiro, Ltd., Las Vegas, for appellant.
Laura Wightman FitzSimmons, Las Vegas, for respondent.

OPINION
SHEARING, J.
Sandra D. Wright and David L. Osburn were married in April 1982 and divorced in March 1996. They had three children: Robert, born February 1984; Lindsay, born October 1986; and Alexandra, born July 1989. At the time of their marriage, Sandra and David were attending Brigham Young University. In 1983, Sandra obtained a degree in design and David obtained a degree in business and finance. After graduating, Sandra worked while David obtained his masters degree in business administration. Sandra became a full-time homemaker in 1984 after the birth of their first child. David was employed by Bank of America, where he remained at the time of trial. David also teaches accounting at the community college.
The district court awarded the parties joint legal and physical custody of their three children, with physical custody of the children rotated weekly. The district court ordered David to pay Sandra $100 per month per child for child support and $500 per month for five years in rehabilitative spousal *1072 support but denied an award for attorney fees. Sandra appeals those portions of the order regarding child support, spousal support and attorney fees.
The child support ordered by the district court was the minimum specified under NRS 125B.070(1), despite the fact that the evidence showed that David's monthly income was $5,177 per month, while Sandra's income was $1,600 per month. While the district court articulated the necessity of "attempt[ing] to maintain comparable lifestyles for the children between the parents' respective households" when the parents have joint physical custody, its order is at odds with this goal.
In Barbagallo v. Barbagallo, 105 Nev. 546, 779 P.2d 532 (1989), this court discussed the difficulty of fairly allocating child support responsibilities between divorced parents with disparate incomes who share equal physical custody of their children. Unfortunately, Barbagallo did not choose to follow the guidance set forth by the legislature in NRS Chapter 125B as to how the child support responsibilities should be allocated when parents share physical custody equally. The result has been that decisions of the district courts vary widely on similar facts.
This court now returns to the language in NRS Chapter 125B for determining the appropriate allocation of child support in shared physical custody arrangements. In NRS 125B.020 and NRS 125B.070, the legislature set forth an objective standard with regard to the support of minor children. These measures, when read together, require each parent to provide a minimum level of support for his or her children, specified by the legislature as a percentage of gross income, depending on the number of children and absent special circumstances. NRS 125B.020 and 125B.070. This requirement is independent of the custody arrangements. Therefore, when custody is shared equally, the determination of who receives child support payments and the amount of that payment can be determined as follows: Calculate the appropriate percentage of gross income for each parent; subtract the difference between the two and require the parent with the higher income to pay the parent with the lower income that difference. In this case, with three children, we would take twenty-nine percent of $1,600, Sandra's monthly income, and twenty-nine percent of $5,177, David's monthly income and subtract the difference. In this case, David would be required to pay Sandra $1,037 each month. This approach embodies the legislative enactment, and provides the uniformity and predictability which was the legislative aim. Of course, the district court also has the option to adjust the amount of the award where special circumstances exist. See NRS 125B.080(9).
Regarding the award of spousal support, the legislature has failed to set forth an objective standard for determining the appropriate amount. Absent such a standard, there appears to be a disparity in the awards for spousal support on similar facts even greater than for child support. In Sprenger v. Sprenger, 110 Nev. 855, 859, 878 P.2d 284, 287 (1994), this court set forth factors for the district court to consider in its determination, but the weight to be given each of the factors is left to the discretion of the district court.
In this case, the district court awarded Sandra rehabilitative spousal support of $500 per month for five years. She had earned a degree in design years ago, but she had not worked in the field for the thirteen years of their marriage. In fact, at the time of the divorce she was employed as a secretary. Sandra had been a homemaker and primary caretaker for the parties' three children during their marriage. She enabled David to obtain an advanced degree and establish a career. David purchased a large home after the divorce, but Sandra was unable to do so and lives in an apartment. It appears very unlikely that in five years, Sandra will be able to earn an income that will enable her to either maintain the lifestyle she enjoyed during the marriage or a lifestyle commensurate with, although not necessarily equal to, that of David, at least until she remarries or her financial circumstances substantially improve. Id. at 860, 878 P.2d at 287. Considering the relevant factors for determining an appropriate spousal support award outlined in Sprenger, it does not appear that the district court's award was "just *1073 and equitable," having regard to the conditions in which the parties will be left by the divorce. See NRS 125.150(1)(a). Therefore, we conclude that the district court abused its discretion in ordering spousal support of only $500 per month for five years.
The disparity in income is also a factor to be considered in the award of attorney fees. It is not clear that the district court took that factor into consideration.
For the foregoing reasons, we reverse those portions of the district court's decree setting child support, spousal support and denying attorney fees and remand this case to the district court for reevaluation of child support, spousal support and attorney fees.
ROSE, YOUNG, and MAUPIN, JJ., concur.
SPRINGER, C.J., dissenting.
I dissent. I would affirm the judgment of the trial court.
My main objection to the majority opinion is that it unfairly and improvidently conjures out of thin air a new child support formula to be applied in cases of joint, equal custody. I say "thin air" because the court states no basis in law or reason[1] for the carelessly-concocted, "split-the-difference" formula that is adopted here, namely: "Calculate the appropriate percentage of gross income for each parent; subtract the difference between the two and require the parent with the higher income to pay the parent with the lower income that difference."
The mother and father of these three children share physical custody jointly and equally. The father earns more than the mother. To give the children the benefit of the father's greater earnings, the trial court correctly followed Barbagallo v. Barbagallo, 105 Nev. 546, 779 P.2d 532 (1989), and required the father to pay to the mother $300.00 per month to make up for the difference. The district court decided, properly, in my opinion, that under the circumstances of this case and under the various NRS 125B.080 factors referred to in Barbagallo that the payment of $100.00 per child would be fair and just in this case. By inventing its own child-support formula, this court will be requiring the father to pay over $1,000.00 per month, almost twice as much as any other legislatively-adopted formula that I have been able to locate.[2] Although I am deeply *1074 concerned about the unfairness suffered by this father, what is of most concern to me now is the unfairness that will be suffered by virtually every joint custodian who has greater earning power than the other joint custodian. Once the word gets out that an excessive, judicially-imposed formula is going to be unexceptionably applied to the joint custodian with the greater income, I fear that it will deter parents from entering into joint custody arrangements. Most joint custodial parents would not object to paying child support to the parent earning less income, but after a certain point the child support becomes more of a subsidy to the payee parent than it is a benefit to the children. As things stand, unless the legislature acts to create a reasonable formula to be applied in joint custody cases, I am afraid that today's ruling will give great pause to the parent who earns more money than the other before agreeing to accept joint custody. I think that this is detrimental to the best interests of Nevada's children.
The district court did not go beyond the bounds of its discretion in deciding this case, and I would affirm the trial court's judgment.
NOTES
[1] As I read the majority opinion, its reasoning seems to be that the legislature favors "requir[ing] each parent to provide a minimum level of support for his or her children, specified by the legislature as a percentage of gross income." The legislature has not provided a formula in cases of joint physical custody; therefore, reasons the majority, in the absence a legislative percentage-of-income formula, this court "should make the determination of ... the appropriate percentage." I disfavor the court's enacting a percentage formula of this kind because to do so properly involves taking into account many difficult social issues and policy-setting functions, functions that can be suitably carried out only by the legislative branch of government. It is not the invasion of the legislative prerogative that disturbs me most about this case, however, it is the slipshod, by-guess-and-by-golly way that the court has gone about enacting a new child support formula.
[2] The main point that I am trying to make in this dissenting opinion is that if the court is going to legislate it should do so in a measured and fair way. The court should have examined the various legislative formulas that have been adopted in these kinds of cases and selected the optimal approach to be adopted in this state. As things stand, the court did not even pretend to do this.

There are many legal and policy matters that must be taken into consideration in the formulation of standards for child support payments that must be made by one parent to another. Most states have adopted one of two approaches, the "income sharing" approach or the Massachusetts approach, sometimes called the "marginal expenditure" model. In adopting a child support model, legislatures necessarily weigh the question of fairness to the child support obligor against the objective of providing adequately for the child. Another consideration is avoiding any shocking disproportion between the standard of living of a child and either of his parents. Formulas cannot be reasonably enacted by legislature or court without giving serious attention to the various alternatives available.
The following is an example of how a rationally-devised formula might work in a joint custody case. If the marginal expenditure model were employed, child support payments in this case would be computed as follows: The total statutory child support obligation of both parents would first be calculated ($5,177.00 + $1,600.00 = $6,777.00 × 29% = $1,965.00). The marginal expenditure method adjusts for the additional costs of two households by an arbitrary increase of 50%; thus $1,965.00 plus 50% of $1,965.00 ($982.00) = $2,947.00, calculated as the total child support expenditure of both households. Half of $2,948.00, or $1,474.00, is required in each household. Of the total income of the two parties, the husband earns 69% and the wife earns 31%. Of the $1,474.00 needed in the wife's home, the husband must contribute 69%; thus the husband must pay $1,017.00. Of the $1,474.00 needed in the husband's home, the wife must pay 31% or $457.00. Setting off these two obligations results in the husband's owing to the wife the difference between $1,017.00 and $457.00 or $560.00 per month. The arbitrary formulation adopted by the majority is grossly unfair to this obligor and to all joint custody obligors in the future.